*564 Chief Justice TOAL.
I respectfully dissent because I read section 15-3-545(A) more narrowly than the majority. In my view, the plain language of section 15-3-545(A) applies to all lawsuits arising from the underlying tortious conduct of the medical professional. However, indemnification actions such as this one are legally distinct from the underlying tort. Accordingly, it is my opinion that the statute does not apply to indemnification actions.
I. Underlying Facts and the Majority’s Holding
This appeal is predicated upon two related cases. The first case involves the Sharpes’ medical malpractice and loss of consortium claims against Dr. Hayes and Providence Hospital for a misdiagnosis made by Drs. Hayes and Taillon seventeen years ago. Providence Hospital settled the first case with the Sharpes ten years ago.
The second case, which is the subject of this appeal, is an equitable indemnification action brought by Providence Hospital against Dr. Taillon and his medical malpractice insurer, who were not named as defendants in the first case. The hospital filed its suit seven years ago.[5]
South Carolina’s medical malpractice statute of repose provides, in relevant part:
[A]ny action ... to recover damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation by any licensed health care provider ... acting within the scope of his profession must be commenced within three years from the date of the treatment, omission, or operation giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered, not to exceed six *565 years from the date of occurrence, or as tolled by this section [because the person is under the age of majority].
S.C.Code Ann. § 15-3-545(A), (D).
The majority affirms the lower courts’ rulings that Providence Hospital’s indemnity claim is time-barred. In doing so, the majority tacitly admits that the medical malpractice statute of repose does not define what constitutes an action “to recover damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation.” Then, without providing a statutory basis for its conclusion, the majority broadly interprets section 15-3-545 to encompass both claims for injury to the person and equitable indemnification. In doing so, it places great importance on the fact that Providence Hospital “may not prevail on its equitable indemnification claim unless it proves that Dr. Taülon is liable to Sharpe for damages for injury to the person.”
I believe the majority errs in its interpretation of section 15-3-545 because it fails to recognize that proof of the underlying tortfeasor’s liability is but one element in an equitable indemnification claim. Accordingly, I would not read the medical malpractice statute of repose to encompass indemnification claims.
II. Analysis
“The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature.” Hodges v. Rainey, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). “Where the statute’s language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning.” Id.
I am persuaded that the General Assembly did not intend section 15-3-545(A) to apply to indemnification actions based on: (1) the plain language of the statute; (2) the nature of an indemnification action; and (3) the broader statutory scheme encompassing section 15-3-545.

A. Nature of Indemnification Actions

A claim for equitable indemnification allows an innocent party to recover “the amount the innocent party must pay to a *566 third party because of the at-fault party’s breach of contract or negligence as well as attorney fees and costs which proximately result from the at-fault party’s breach of contract or negligence.” Town of Winnsboro v. Wiedeman-Singleton, Inc., 307 S.C. 128, 130-31, 414 S.E.2d 118, 120 (1992). Thus, damages in an equitable indemnification suit include: (1) the damages caused due to the underlying tort; and (2) the innocent party’s attorneys’ fees incurred in defending itself in the underlying tort suit. See, e.g., Rhett v. Gray, 401 S.C. 478, 497-98, 736 S.E.2d 873, 883-84 (Ct.App.2012) (quoting Addy v. Bolton, 257 S.C. 28, 33, 183 S.E.2d 708, 709-10 (1971)).[6]
Moreover, unlike the underlying tort claim, an equitable indemnification claim does not arise at the time the underlying tort plaintiff suffered the tortious damage. Rather, an indemnity claim “accrues at the time the indemnity claimant suffers loss or damage, that is, at the time of payment of the underlying claim, payment of a judgment thereon, or payment of a settlement thereof by the party seeking indemnity.” Maurice T. Brunner, Annotation, When Statute of Limitations Commences to Run Against Claim for Contribution or Indemnity Based on Tort, 57 A.L.R.3d 867 (1974); accord First Gen. Servs. of Charleston, Inc. v. Miller, 314 S.C. 439, 444, 445 S.E.2d 446, 449 (1994).
Therefore, an indemnification action is separate and distinct from the underlying tort action, as the damages suffered by the parties involved in each suit are distinct, and the two causes of action accrue at different times. See, e.g., Canal Ins. Co. v. Leb. Ins. Agency, Inc., 504 F.Supp.2d 113, 117 (W.D.Va.2007) (“An indemnity claim does not seek recovery for any direct harm caused by the defendant to the plaintiff— it is clearly distinct from a direct cause of action.”); McDermott v. City of New York, 50 N.Y.2d 211, 428 N.Y.S.2d 643, 406 N.E.2d 460, 462-63 (1980) (“[T]he indemnity claim is a separate substantive cause of action, independent of the underlying wrong....”); Cent. Wash. Refrigeration, Inc. v. Barbee, 133 Wash.2d 509, 946 P.2d 760, 764 (1997) (“Indemnity actions are distinct, separate causes of action from the under *567 lying wrong and are governed by separate statutes of limitations.”); Brunner, supra (“The cause of action for indemnity of one whose liability for a tort is secondary or constructive, against one whose liability for the tort is primary, is separate and distinct from the injured person’s cause of action for the tort, and is generally recognized not to be a mere species of subrogation to the tort cause of action.”).[7]
The majority essentially equates Providence Hospital’s indemnity action with the underlying tort action. However, proof of the underlying tortfeasor’s liability is only one element that the hospital must prove to prevail on its equitable indemnification claim. That element is not, by itself, “an action ... to recover damages for injury to the person,” but instead is a component of an action to reimburse an innocent party who has paid damages on behalf of the underlying tortfeasor. Therefore, I disagree with the majority that the medical malpractice statute of repose applies so broadly as to encompass any action even tangentially related to “an action ... to recover damages for injury to the person.”
Further, under the majority’s reading of section 15-3-545, an innocent party named in the underlying tort suit would rarely be able to bring an equitable indemnification claim. For example, if “a lawsuit is filed on the eve of the running of the statute of repose, but is not resolved until after the statute has run, the [indemnification] action will be barred before the right has even accrued.” Capco of Summerville, Inc. v. J.H. Gayle Constr. Co., 368 S.C. 137, 144, 628 S.E.2d 38, 42 (2006) (emphasis added). I believe this is an unduly harsh consequence of the majority’s interpretation of section 15-3-545, and one that was not intended by the General Assembly.
The majority’s holding represents a fundamental misunderstanding of the nature of indemnification actions which I fear will have far-reaching effects on the ability to seek indemnifi *568 cation. Specifically, it imposes several new “requirements” to bring timely indemnification actions.
For example, the majority states that the underlying action must establish the fault of the underlying tortfeasor, whether or not he is a named party in that action. Indeed, the majority goes so far as to require, prior to the running of the statute of repose, either an allegation of medical malpractice against the underlying tortfeasor, or possibly even an adjudication by the innocent party against the tortfeasor.
I find this new “requirement” to bring timely indemnification actions patently at odds with the doctrines of standing and ripeness. As explained, supra, the innocent party’s right to sue for indemnification does not accrue until it actually sustains damages through either paying an injured party on behalf of the tortfeasor, or incurring attorneys’ fees from defending itself in the underlying tort suit. Therefore, there is no justiciable case or controversy until the conclusion of the underlying tort action, regardless of its outcome. See, e.g., Waters v. S.C. Land Res. Conservation Comm’n, 321 S.C. 219, 227-28, 467 S.E.2d 913, 917-18 (1996) (“A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute.... It is not enough that a threat of possible injury currently exists; the mere threat of a potential injury is too contingent or remote to support present adjudication.” (citations omitted) (internal quotation marks omitted)).
The plain language of section 15-3-545(A) explicitly applies to “damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation by any licensed health care provider ... acting within the scope of his profession.” In contrast, an indemnification claim seeks to recover for the loss of a judgment or settlement an innocent third party is obligated to pay, rather than for medical injury.
Here, Providence Hospital’s damages arose due to its vicarious liability for a third-party tortfeasor’s misdiagnosis. Thus, Providence Hospital’s equitable indemnification suit does not directly seek to recover for any harm caused by the tort *569 defendant to the underlying tort plaintiff. Accordingly, it is my view that section 15-3-545 does not bar Providence Hospital’s equitable indemnification claim.[8]

B. Statutory Scheme

Additionally, I believe other provisions from the surrounding statutory scheme evidence the General Assembly’s intent to exclude indemnification actions from the reach of section 15-3-545.
“[Statutes are to be construed with reference to the whole system of law of which they form a part.” Roche v. Young Bros., Inc. of Florence, 332 S.C. 75, 81, 504 S.E.2d 311, 314 (1998). The medical malpractice statute of repose is part of Title 15, Chapter 3 of the South Carolina Code, which governs “Limitations of Civil Actions.” Title 15, Chapter 3 likewise contains a statute of repose for improvements to real property, which provides in relevant part:
No actions to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property may be brought more than eight years after substantial completion of the improvement. For purposes of this section an action based upon or arising out of the defective or unsafe condition of an improvement to real property includes:
*570 (6) an action for contribution or indemnification for damages sustained on account of an action described in this section; ...
See S.C.Code Ann. § 15-3-640 (2005 & Supp.2013).
In my opinion, this section demonstrates that the General Assembly is capable of and will expressly include indemnification claims within a statute of repose when it so desires. The express inclusion of indemnification claims in section 15-3-640 — and the absence of any mention of indemnity claims within section 15-3-545 — indicates to me that the General Assembly did not intend to bring such claims within section 15-3-545. See Berkeley Cnty. Sch. Dist. v. S.C. Dep’t of Revenue, 383 S.C. 334 n. 15, 679 S.E.2d 913, 925 n. 15 (2009) (considering related statutes as relevant because they indicate the “General Assembly knows how to” include a provision when it so desires); Doe v. Brown, 331 S.C. 491, 496, 489 S.E.2d 917, 920 (1997) (considering related statutes and concluding that “[t]he clear and unambiguous language of [] these statutes indicates that when the Legislature intended to exclude ‘criminal parents’ from the adoption process, it did so”); 82 C.J.S. Statutes § 478 (2014) (“[W]here a statute contains a given provision, the omission of such a provision from a similar statute concerning a related subject is significant to show that a different intention has existed.”).
Conclusion
The majority makes a somewhat emotional argument that Providence Hospital should not prevail because the underlying tortious conduct by Drs. Hayes and Taillon occurred “over seventeen years ago.” However, the equitable indemnification action at issue here began only three years after Providence Hospital’s indemnity claim accrued, upon its settlement with the Sharpes.
For the foregoing reasons, I would hold that section 15-3-545 does not bar an indemnity claim that arises from an underlying medical malpractice action and which commences more than six years after the date of the occurrence. Therefore, I would reverse and remand for further proceedings.
HEARN, J., concurs.

. In other words, Providence Hospital filed its suit three years after its indemnity claim accrued, upon the payment of its settlement with the Sharpes. Cf. First Gen. Servs. of Charleston, Inc. v. Miller, 314 S.C. 439, 444, 445 S.E.2d 446, 449 (1994) ("As to indemnity, the statute of limitations generally runs from the time judgment is entered against the defendant.”).

. In contrast, in the underlying tort suit, the injured party may only recover damages caused by the tort itself, and may not recover attorneys' fees.

. I note that the majority cites no authority beyond the court of appeals' opinion in this case for its conclusion that "Providence Hospital’s [equitable indemnification] action is an action to recover damages for injury to the person.” (Citation omitted) (quotation marks omitted). While I agree that the indemnification action is closely entwined with the merits of the underlying tort action, there is no authority in the law of this State for the conclusion that the two causes of action are wholly interdependent.

. Medical malpractice statutes of repose vary from state to state. However, I find persuasive the reasoning of the Missouri Supreme Court in considering a statute similar to section 15-3-545. The Missouri Supreme Court found that Missouri’s medical malpractice statute of repose "encompasses those actions where the consumer of health services seeks damages for injuries resulting from some improper, wrongful or careless acts or omissions on the part of the healthcare provider in the delivery of health care to the consumer.” Rowland v. Skaggs Cos., 666 S.W.2d 770, 772-73 (Mo.1984). Therefore, the court concluded that there is no reason to subject a contribution action to the medical malpractice statute of repose because "an action for contribution is neither grounded in tort nor reasonably related to the types of actions enumerated” in the statute of repose; rather, a contribution action "accrues from the existence of a joint obligation on a liability shared by tortfeasors.” Id. at 773. I would adopt this reasoning with respect to our own medical malpractice statute of repose.